**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Solomon GAINES, Defendant-Appellant.**

**No. 81-7174.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1982.

Charles T. Erion (court-appointed), Macon, Ga., for defendant-appellant.

W. Louis Sands, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

VANCE, Circuit Judge:

Appellant Solomon Gaines was convicted after trial by jury of three counts of willfully and knowingly filing a false income tax return, in violation of 26 U.S.C. § 7206.[1] Specifically, Gaines was convicted of filing tax returns for the years 1975–1977 that seriously understated his gross income. On appeal Gaines argues that the district court erred in refusing several proposed jury instructions and in restricting his attorney's summation to the jury. We affirm.

Gaines, a lifelong resident of Monroe County, Georgia, dropped out of school after the fifth grade and appears to be functionally illiterate. After working on his family's farm for several years Gaines began to work in the pulpwood business, where he proved to be very successful. In less than ten years he learned enough of the industry to establish his own independent contracting business and employ other people as needed. This business included cutting standing timber and hauling it to the lumber mills of Georgia Timberlands, Inc.[2] For each delivery Georgia Timberlands issued scale tickets that indicated the weight of the timber received. At the end of each week Gaines took the scale tickets to the company office and company personnel computed the gross amount due less deductions for stumpage,[3] workmen's compensation, and cash advances. Gaines then received a check for the net amount due with an attached stub indicating the gross income, the relevant deductions, and the net income remitted.

In 1975, 1976, and 1977 Georgia Timberlands provided Gaines with an appropriate written statement indicating his gross income for the year. Gaines, however, did not rely upon the statements in preparing his income tax returns for the three years in question. Instead, he gave his weekly check stubs and receipts for any business expenses to a bookkeeper, who then completed his tax returns. It is undisputed that Gaines failed to turn over all of the weekly check stubs to his bookkeeper and that, as a result, his returns seriously understated his income for the years in question. The discrepancies between the gross receipts reported in the returns and the gross receipts reflected in the annual statements provided by Georgia Timberlands were as follows:

| | Actual Receipts | Reported Receipts | Discrepancy |
|---|---|---|---|
| 1975 | $ 30,408.07 | $ 7,762.00 | $ 22,646.07 |
| 1976 | 24,793.35 | 14,196.69 | 10,596.66 |
| 1977 | 23,616.45 | 9,665.65 | 13,950.80 |
| | $ 78,817.87 | $ 31,624.34 | $ 47,193.53 |

After receiving the incorrect tax returns Gaines signed and mailed them to the Internal Revenue Service.

Gaines was subsequently indicted for willfully and knowingly filing false income tax returns. At trial he did not dispute that the returns were false or that he had failed to give all of his weekly check stubs to his bookkeeper. The only issues for the jury, therefore, were whether Gaines had known that the tax returns contained false information and whether he had willfully filed the returns despite that knowledge.

---

1. 26 U.S.C. § 7206 provides in pertinent part:

 Any person who—

 (1) Declaration under penalties of perjury.—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

 . . . . .

 shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more than 3 years, or both, together with the costs of prosecution.

2. In 1977 Gaines delivered timber to Treeco, Inc. as well as to Georgia Timberlands. The sales to Treeco accounted for $6,848.24 of his gross earnings for the year.

3. Stumpage is the fee due the landowner for

The jury convicted Gaines and this appeal followed.[4]

## I.

At trial, the district court gave the following jury instruction:

Now, whenever the fact appears beyond a reasonable doubt from the evidence in the case that the defendant signed his income tax return, the jury may draw the inference and find that the defendant had knowledge of the contents of the return. Whether or not the jury draws such an inference is left entirely to the jury.

Gaines contends that this instruction effectively required the jury to presume that he knew the contents of the three tax returns if he signed them. He argues that the upshot of the instruction was to shift to him the burden of proof as to one of the elements of the crime charged, in violation of the due process clause of the fifth amendment. Gaines argues further that the district court compounded the error by refusing to instruct the jury that it should not conclusively presume knowledge of the contents of the returns merely from the fact that Gaines signed them. We reject both contentions.

A conclusive presumption is an evidentiary device that tells the trier of fact that it *must* find a certain elemental fact upon proof of a basic evidentiary fact, at least in the absence of some proof by the defendant to rebut the presumed connection. *County Court v. Allen,* 442 U.S. 140, 157–59 & n.16, 99 S.Ct. 2213, 2224–2226, 60 L.Ed.2d 777 (1979). Because such a required finding may affect the placement of the burden of proof the use of conclusive presumptions in criminal cases may raise difficult constitutional questions.[5] *See, e.g.,*

*Sandstrom v. Montana,* 442 U.S. 510, 519, 99 S.Ct. 2450, 2456–2457, 61 L.Ed.2d 39 (1979); *County Court v. Allen,* 442 U.S. at 157–59 & nn. 16–17, 99 S.Ct. at 2225–2226; *Leary v. United States,* 395 U.S. 6, 31–36, 89 S.Ct. 1532, 2224–2226 & nn. 16, 17, 23 L.Ed.2d 57 (1969). A permissible inference, on the other hand, is a common evidentiary tool that allows, without requiring, the trier of fact to infer the existence of an elemental fact upon proof of a basic evidentiary fact. *County Court v. Allen,* 442 U.S. at 156–57, 99 S.Ct. at 2224–2225. Permissive inferences are a commonplace staple of the law of evidence that do not affect the placement of the burden of proof unless the connection permitted by the inference is irrational, and, absent proof of the invalidity of an inference as applied to a particular case, their use is generally countenanced. *See, e.g., id.; Tot v. United States,* 319 U.S. 463, 467, 63 S.Ct. 1241, 1244–1245, 87 L.Ed. 1519 (1943); *Crane v. Lessee of Morris,* 31 U.S. (6 Pet.) 598, 620–21, 8 L.Ed. 514 (1832); *Georgia Southern & Florida Ry. v. Perry,* 326 F.2d 921, 925 (5th Cir. 1964); *see also* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 300[01] & n.3 (1981) (justifiable inference is not synonymous with presumption).

The determination whether a jury instruction describes a conclusive presumption or a permissible inference requires a careful examination of the words actually spoken to the jury. *Sandstrom v. Montana,* 442 U.S. at 514, 99 S.Ct. at 2454. The instruction does not create a conclusive presumption if no reasonable juror could have interpreted the words of the instruction to require a certain ultimate conclusion upon the finding of a subsidiary evidentiary fact. *Id.* In this case the district court instructed

---

the standing timber removed from his property.

4. Gaines received a suspended sentence and was placed on probation for five years.

5. One example of a conclusive presumption that has the effect of placing the burden of persuasion upon the defendant is the presumption of sanity. *Cf. Patterson v. New York,* 432 U.S. 197, 201 -02, 205–08, 210–11, 97 S.Ct.

2319, 2322–2323, 2324–2326, 2327, 53 L.Ed.2d 281 (1977) (holding constitutional New York law that places burden of persuasion upon defendant who raises affirmative defense in criminal prosecution). *See generally County Court v. Allen,* 442 U.S. 140, 157–59 & n.16, 99 S.Ct. 2213, 2224–2226, & n.16, 60 L.Ed.2d 777 (1979) (discussion of differences among conclusive presumptions).

that "the jury *may draw the inference* and find that the defendant had knowledge of the contents of the return" (emphasis added). Indeed, emphasizing the permissive rather than mandatory nature of the instruction, the district court continued:

> Whether or not the jury draws such an inference is left entirely to the jury.

The language of the instruction is clear: it permits the jury to draw an inference as to the requisite state of mind from a certain probative fact. Because the jury remained free to accept or reject the inference the instruction neither removed the issue of knowledge from the jury nor relieved the government of its burden of proving every material element of the crime charged.[6] *See United States v. Freeman,* 619 F.2d 1112, 1123 (5th Cir.1980) (similar jury instruction upheld as allowing permissible inference), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981).

Gaines relies heavily upon the seventh circuit's decision in *United States v. Bass,* 425 F.2d 161 (7th Cir.1970). In that case a jury instruction indistinguishable from the one at issue in this case was condemned as creating a conclusive presumption. By failing to appreciate the manifestly permissive language of the instruction the *Bass* decision created constitutional problems where none existed, and we decline to follow it. Rather, we adopt the position of the tenth circuit on this issue. In *Wainwright v. United States,* 448 F.2d 984 (10th Cir.1971), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 684 (1972), that court reviewed and

upheld a jury instruction that is indistinguishable from the ones given below and in *Bass,*[7] and explicitly rejected the conclusion reached by the seventh circuit. *Id.* at 986–87; *see also United States v. Romanow,* 505 F.2d 813, 814–15 (1st Cir.1974) (signature at bottom of tax return is only prima facie evidence of taxpayer's knowledge of contents of return).

Gaines also argues that his presentation of evidence suggesting he is illiterate rebutted any inference concerning his state of mind that might be drawn from his signature. Gaines contends that this rebuttal necessitated additional evidence of his knowledge and a jury instruction to that effect. We understand this argument to mean that even if the instruction given by the district court established a permissible inference rather than a conclusive presumption it was invalid in light of the circumstances of this case.

 Although it is clear that the use of a permissible inference may be invalid in some cases, the burden of demonstrating invalidity is on the party challenging the use of the inference. *See Barnes v. United States,* 412 U.S. 837, 844–46 & nn. 8–11, 93 S.Ct. 2357, 2362–2363, & nn. 8–11, 37 L.Ed.2d 380 (1973). This burden is a heavy one. An instruction based on a permissible inference will be overturned "only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *County Court v. Allen,* 442 U.S. at 157, 99 S.Ct. at 2224–

---

**6.** Any argument based upon *United States v. Chiantese,* 560 F.2d 1244 (5th Cir.1977) (en banc), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979), is unavailing. At no point did the court in *Chiantese* condemn instructions employing the sort of permissive language used in this case. Rather, the court was concerned with the disparate case law within the circuit concerning presumptions in criminal cases. Exercising its supervisory powers, the court stated that trial courts should neither use the language of presumptions nor any language that might suggest that a jury may infer an elemental fact unless the defendant disproved it. *Id.* at 1255.

**7.** The jury instruction at issue in *Wainwright* was as follows:

> Now whenever the facts appear beyond a reasonable doubt from the evidence in the case that the accused had signed his tax return, a jury may draw the inference and find that the accused had knowledge of the contents of the return.

*Wainwright v. United States,* 448 F.2d 984, 986 (10th Cir.1971), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 684 (1972). The tenth circuit approved this jury instruction twice. The cited case was a collateral attack on a judgment pursuant to 28 U.S.C. § 2255. The court had previously rejected the same contention on direct appeal. *See United States v. Wainwright,* 413 F.2d 796, 801–02 (10th Cir. 1969), *cert. denied,* 396 U.S. 1009, 90 S.Ct. 566, 24 L.Ed.2d 501 (1970).

2225; *see United States v. Corral-Martinez,* 592 F.2d 263, 269–70 (5th Cir.1979). Gaines has fallen far short of meeting the requisite burden. There are at least three ways in which the jury could properly have connected the fact that Gaines signed the returns to a finding that he knew that the returns contained false information. First, the jury might not have credited the evidence of Gaines' alleged illiteracy. Although hardly self-flattering, this testimony was self-serving and could be questioned in light of Gaines' demonstrated business acumen. Second, the jury could rationally have assumed that Gaines was illiterate with respect to words, but not with respect to numbers. Gaines' signature at the bottom of a form that prominently displayed the critical gross income figure on the reverse side indicates that he saw the return and probably saw the glaringly inaccurate number. That Gaines may not have comprehended the import of the standard perjury clause on the tax returns does not mean that he did not appreciate the difference between $7,762.00 and $30,408.07.[8] Indeed, common sense indicates that a successful businessman would immediately recognize the difference between those two numbers. Third, the jury could have considered the import of Gaines' signature in light of his testimony indicating that he knew he had not turned over to his bookkeeper all of his business receipts. That consideration could reasonably lead to the conclusions that Gaines knew that his tax returns could not be accurate and that he knew he had nonetheless filed income tax returns for the years in question.[9] As there are three rational ways in which the jury could make the connection permitted by the inference the jury instruction passes muster.

Gaines also incorrectly asserts that the district court erred in failing to give his proposed cautionary jury instruction.[10] A district court's refusal to give a requested instruction constitutes reversible error only if

> the instruction (1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impaired the defendant's ability to effectively present a given defense.

*United States v. Grissom,* 645 F.2d 461, 464 (5th Cir.1981); *see Pine v. United States,* 135 F.2d 353, 355 (5th Cir.), *cert. denied,* 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (1943). In giving an instruction that correctly allowed the jury to infer that Gaines knew the contents of his tax returns, the district court necessarily refrained from instructing the jury to presume guilty knowledge from a finding that Gaines signed the returns. Consequently, the charge given implicitly covered the substance of the requested jury instruction. *See United States v. Grote,* 632 F.2d 387, 391 (5th Cir.1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981). Additionally, a criminal defendant has no right to select the particular phrasing of the jury instructions given in his case. *See United States v. Southers,* 583 F.2d 1302, 1306–07 (5th Cir.1978); *United States v. Thetford,* 676 F.2d 170, 178 (5th

---

**8.** The disparity between the reported and actual income was greatest in 1975. The disparity between the gross income shown on the tax returns and appellant's actual gross income during 1976 and 1977 was also quite substantial.

**9.** It is unavailing for Gaines to argue that even if he knew that the tax returns could not be accurate he is excused from criminal liability because he did not know the exact amounts of his understatements. Deliberate ignorance of the exact nature of his misconduct will not excuse a defendant. *See, e.g., Turner v. United States,* 396 U.S. 398, 417, 90 S.Ct. 642, 653, 24 L.Ed.2d 610 (1970).

**10.** Gaines' proposed jury instruction stated in pertinent part:

> [A]lthough his signature at the bottom of each return he signed is sufficient evidence from which you may infer that he knew the contents of that return, you need not so conclude and in fact, it would be improper for you to charge Mr. Gaines with conclusive knowledge of the contents of the return on the basis of his signature alone if there is other credible evidence leading you to conclude that he was not aware of the contents of the return.

Cir.1982); *United States v. Hudler,* 605 F.2d 488, 490 (10th Cir.1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). The district court, therefore, has wide latitude in determining the exact formulation of the jury instruction. *United States v. Enstam,* 622 F.2d 857, 870 (5th Cir.1980), *cert. denied,* 451 U.S. 907, 101 S.Ct. 1974, 68 L.Ed.2d 294 (1981); *United States v. L'Hoste,* 609 F.2d 796, 805 (5th Cir.), *cert. denied,* 449 U.S. 833, 101 S.Ct. 104, 66 L.Ed.2d 39 (1980). The proposed instruction was both confusing and cumulative, and the district court was well within its discretion in refusing to give it. *See, e.g., United States v. Goss,* 650 F.2d 1336, 1344 (5th Cir. 1981); *United States v. Castro,* 596 F.2d 674, 677 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979).

## II.

Gaines raises three other objections to the district court's handling of his requested jury instructions. First, he contends that the district court should have instructed the jury that the misdemeanor provisions of 26 U.S.C. § 7207 [11] were lesser included offenses under the charged crime. Second, Gaines argues that the district court improperly refused to give his proposed instruction on the meaning of willfulness. Third, Gaines objects to the district court's refusal to give an instruction to the effect that it is not a crime under the Internal Revenue Code to keep inadequate records. We find no merit in any of these contentions.

Gaines' first argument concerning the lesser included offense instruction has been squarely foreclosed by precedent binding upon this court.[12] In *Escobar v. United States,* 388 F.2d 661 (5th Cir. 1967), *cert. denied,* 390 U.S. 1024, 88 S.Ct. 1411, 20 L.Ed.2d 282 (1968), the former fifth circuit stated that a "lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Id.* at 666 (quoting *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009–1010, 13 L.Ed.2d 882 (1965) (emphasis omitted)). The court then pointed out that the only difference between the statutes is that section 7206 requires a false statement to be "made under the penalties of perjury" while section 7207 makes no such requirement. *Id.* Because it was not disputed that all the tax returns in question contained a perjury clause the *Escobar* court reasoned that a charge under section 7207 was not required. *Accord United States v. Tsanas,* 572 F.2d 340, 347 (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 156 L.Ed.2d 84 (1978); *United States v. Fritz,* 481 F.2d 644, 645 & n.2 (9th Cir.1973). The case before us is indistinguishable from *Escobar.* Gaines admits that the three tax returns in question contained standard perjury clauses. Consequently, there was no factual dispute that would have justified a jury instruction on the lesser offenses set out in section 7207.[13]

Gaines' contention that there should have been an instruction on willfulness is equally unavailing. A criminal defendant has no right to select the particular wording of a proposed jury instruction. As long as the instruction actually given is a

---

11. 26 U.S.C. § 7207 was amended by Act of Congress in 1980. *See* Pub.L. No. 96–603, § 1(d)(5), 94 Stat. 3505 (1980). The preamendment text of section 7207, which would encompass conduct occurring at the time of Gaines' activities, provided in pertinent part:

 Any person who willfully delivers or discloses to the Secretary or his delegate any list, return, account, statement, or other document, known by him to be fraudulent or to be false as to any material matter, shall be fined not more than $1,000, or imprisoned not more than 1 year, or both.

12. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

13. We do not mean to say that the misdemeanor provisions of section 7207 could never be a lesser included offense of section 7206. Under some circumstances a lesser included offense instruction might be appropriate. *See United States v. Bishop,* 412 U.S. 346, 361 n.9, 93 S.Ct. 2008, 2018 n.9, 36 L.Ed.2d 941 (1973).

correct statement of the law, fairly presents the issues to the jury, and is substantially similar to the defendant's proposed instruction, the district court has great latitude in phrasing it. *See United States v. Bizzard,* 674 F.2d 1382, 1389 (11th Cir.1982); *United States v. Satterfield,* 644 F.2d 1092, 1096 (5th Cir.1981); *United States v. Quimby,* 636 F.2d 86, 90 (5th Cir.1981). Only a cursory review of the two charges is necessary to show that the district court correctly defined willfulness and gave the substance of Gaines' proposed instruction.[14] The district court did not err in rephrasing the requested jury instruction.[15]

Gaines' final jury instruction claim must also fail. The adequacy or inadequacy of a taxpayer's record keeping procedures is of limited relevance to a determination of guilt or innocence under section 7206. The care with which Gaines kept his records goes only to the issue of willfulness, *see United States v. Irwin,* 593 F.2d 138, 140–41 (1st Cir.1979), an issue the district court presented to the jury in the instruction actually given. As the district court adequately presented the issue to the jury, the district court did not abuse its discretion in refusing to adopt Gaines' proffered language. Additionally, the district court had reason to reject the proposed instruction because it was tangential to the case and could have distracted the jury from the central issues. *See United States v. Hartley,* 678 F.2d 961, 974 (11th Cir. 1982).

### III.

Gaines' final contention on appeal is that the district court improperly restricted his counsel's summation. During closing argument defense counsel told the jury that Gaines could not be convicted unless his misstatements were substantial. The district court sustained the prosecution's objection to this line of argument and informed the jury that the issue in a section 7206(1) prosecution is whether the misstatements were material, not whether they were sub-

---

**14.** Appellant requested the district court to give the following charge:

You will note that each count of the indictment in this case charges that the defendant acted "willfully."

In order for you to find that the defendant acted willfully you must determine beyond a reasonable doubt not only that the defendant committed each element of the offense charged, but that in doing so he acted voluntarily and intentionally, and with the specific intent to commit the crime charged; that is to say, that he had the bad purpose either to disobey or to disregard the requirements of the law.

In determining whether the defendant had a bad purpose you may consider such matters as whether he acted in bad faith or with an evil intent; whether he acted with an evil motive and a lack of justification in view of all of his financial circumstances; or whether he realized he should have reported more gross receipts than he did.

. . . . .

However, if you believe that the defendant's actions resulted merely from the inadequacy of his record-keeping procedure, or from negligence, or even from an intentional disregard of rules and regulations but without the specific intent to deceive the Government, then it would be your duty to find him not guilty, because each of the offenses charged requires a specific wrongful intent, and it is essential to such an intent that the defendant had actual knowledge of the existence of his legal obligation and a wrongful intent to evade that obligation.

Instead of giving appellant's proposed jury instruction, the district court gave the following charge:

Now, of course, note that the term specific intent was used. Now, intent and motive, ladies and gentlemen, should never be confused. Motive is what prompts a person to act or fail to act. Intent refers only to the state of mind with which the act or failure to act is done . . . . Now, speaking further of intent and knowledge, intent and knowledge is something that exists in a person's mind and cannot always be proved by exact and demonstrable evidence. Therefore, one's intent and knowledge has to be judged, to a certain extent at least, by his intelligence as shown by the evidence, and generally by judging him as reasonable prudent persons experienced in the everyday affairs of life judge one another . . . .

**15.** Gaines also argues that the willfulness element of section 7206 requires that the prosecution prove beyond a reasonable doubt that Gaines knew the contents of the perjury clause. This argument has already been rejected by the former fifth circuit. *See Escobar v. United States,* 388 F.2d 661, 664–65 (5th Cir. 1967), *cert. denied,* 390 U.S. 1024, 88 S.Ct. 1411, 20 L.Ed.2d 282 (1968).

stantial. The court went on to say that materiality was a question for the court and that, in any event, no one could reasonably argue that the misstatements were not substantial.

■ The district court has broad discretion over the scope of closing argument. *United States v. Newman,* 628 F.2d 362, 365–66 (5th Cir.1980). Absent a showing of an abuse of discretion the district court will not be reversed for limiting summation as long as the defendant has the opportunity to make all legally tenable arguments that are supported by the facts of the case. *See United States v. Scales,* 599 F.2d 78, 80–81 (5th Cir.1979); *United States v. Smith,* 433 F.2d 1266, 1272 (5th Cir.1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328 (1971).

■ We find no abuse of discretion here. The district court properly determined that the substantiality of the misstatements was not relevant to the prosecution under section 7206. *Schepps v. United States,* 395 F.2d 749 (5th Cir.), *cert. denied,* 393 U.S. 925, 89 S.Ct. 256, 21 L.Ed.2d 261 (1968); *Hoover v. United States,* 358 F.2d 87, 89 (5th Cir.), *cert. denied,* 385 U.S. 822, 87 S.Ct. 50, 17 L.Ed.2d 59 (1966). That issue is properly raised in a prosecution for tax evasion, but has no bearing in a case such as this one where the focus of inquiry is on the fact of misstatement. *Schepps v. United States,* 395 F.2d at 749. As noted by the district court, the relevant line of inquiry in a section 7206(1) prosecution is the materiality of the misstatements, *see Hoover v. United States,* 358 F.2d at 88; *United States v. Tsanas,* 572 F.2d at 343, and materiality is a legal issue left to the court, *United States v. Taylor,* 574 F.2d 232, 235 (5th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Haynes,* 573 F.2d 236, 240 (5th Cir.), *cert. denied,* 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 153 (1978);

*United States v. Strand,* 617 F.2d 571, 574 (10th Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 120, 66 L.Ed.2d 48 (1980). The district court properly prevented defense counsel from arguing to the jury a false legal proposition. The court also properly acted to correct any false impressions that the abortive argument may have left with the jury by explaining that the amounts of the misstatements were legally irrelevant in this case.[16]

AFFIRMED.

---

**16.** Gaines also argues that the district court erred in not instructing the jury that the government must prove that the amounts of the misstatements were substantial. This argument is based on an incorrect statement of the law, and we "cannot reverse a trial court for failure to give requested instructions unless those requested instructions are themselves an accurate statement of the law." *United States v. Hewitt,* 663 F.2d 1381, 1389 (11th Cir. 1981).